# In the United States Court of Federal Claims

No. 10-855
(Filed: February 11, 2011)[1]

* * * * * * * * * * * * * * * * * * * *

DIGITALIS EDUCATION
SOLUTIONS, INC.,

        *Plaintiff,*

v.

THE UNITED STATES,

        *Defendant,*

MORRIS & LEE
d/b/a SCIENCE FIRST,

        *Intervenor.*

Bid protest; standing; prejudice;
"substantial chance"; 10 U.S.C.
§ 2304; FAR 6.3

* * * * * * * * * * * * * * * * * * * *

    *Dennis Dunphy* and *Joaquin M. Hernandez,* Seattle, WA, for plaintiff.

    *William P. Rayel*, United States Department of Justice, Civil Division, Washington, D.C., for defendant.

    *James Krause*, Jacksonville, FL, for intervenor.

_____

OPINION

_____

BRUGGINK, Judge.

    This is a post-award protest of a sole-source procurement.   The controlling question is whether any of the alleged errors were prejudicial to plaintiff.   Pending is plaintiff's motion for judgment on the administrative

---

[1] This opinion was initially filed under seal on February 9, 2011. The parties were afforded seven days to propose redactions, but promptly responded indicating there were no redactions they wished to make.

record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC").  Also pending are defendant's and intervenor's motions to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) and, in the alternative, their cross-motions for judgment on the administrative record.  The motions are fully briefed, and we heard oral argument on January 31, 2011.  For the reasons stated below, we grant defendant's and intervenor's motions to dismiss.[2]

## BACKGROUND[3]

Digitalis Education Solutions, Inc. ("Digitalis") makes and sells planetaria.  Such devices, typically used for teaching astronomy or celestial navigation, project an image of the night sky onto the interior of a dome-shaped roof.  The procurement at issue involved the purchase of about 50 portable planetaria for use in elementary and high schools located at military installations across the United States and overseas.  These schools, which educate the children of military service members, are overseen by the Department of Defense Educational Activity ("DODEA"), a component of the Department of Defense.

For many years, DODEA schools have used the "Starlab" brand portable planetaria manufactured by one of Digitalis' competitors, Morris & Lee d/b/a Science First ("M&L").  In September of 2009, DODEA conducted an unadvertised, sole-source procurement of 15 Starlab planetaria.  The systems purchased in 2009, like the older Starlab systems already in use, were analog models in which a variety of specially printed cylinders could be placed

---

[2] Two other motions are currently pending. After oral argument, the government filed a new motion to dismiss, arguing that we should dismiss this protest as moot because the work has been substantially performed.  Plaintiff has filed a responsive brief.  We have considered the argument, but, in light of this opinion, the mootness issue is itself moot.  We therefore deny the government's motion.  We note, in any event, that the plaintiff would still have the right to argue for non-injunctive relief.

In addition, plaintiff moved to supplement the administrative record prior to oral argument.  At oral argument, we stated that, should we wish to rely on the proffered materials, we would grant this motion.  Because we include some of the material in the Background section of this opinion, we grant the motion.  The material does not, however, affect our analysis.

[3] The facts, which are undisputed unless otherwise noted, are drawn from the Administrative Record and from the exhibits and declarations appended to the parties' filings.

over a light source to project the night sky.[4]  An initial draft of the Justification and Approval ("J&A") for the 2009 sole source procurement noted that Digitalis manufactured a similar but more expensive product.  The published J&A, however, made no mention of Digitalis.  Rather, it stated that Starlab was the only known product to integrate science with other subject matter and that, because Starlab systems were already used in DODEA schools, lesson plans and curricula for that system were already in place.

A year later, in September of 2010, the agency again began the process of acquiring more Starlab planetaria, a process that eventually culminated in the purchase of approximately 50 digital Starlab systems.  Unlike the older analog models already in use, the new digital systems use a laptop computer, special software, and a data projector to display the celestial subjects.  The acquisition occurred with astonishing rapidity, with the entire procurement, from conception to contract award, taking place in only 15 days.

The first record of any contemplation of this procurement came on September 10, 2010, in an internal DODEA email suggesting the possibility of ordering Starlab systems should funding become available.  A reply email, dated September 13, noted that such purchases must be publicly posted and suggested that, if the purchase was a possibility, a posting could be done "for couple [sic] days, just in case we need to go this route."  Pl. Reply App. 9.  The idea apparently met with approval, as a subsequent email, describing how the Starlab systems could supplement planned curriculum updates, was forwarded as an "addition for the J&A." Administrative Record ("AR __") 284.

Friday, September 17, 2010, saw a flurry of procurement related activity, both within DODEA and between the agency and M&L.  One internal DODEA email summarizes a conversation held with M&L earlier that day to discuss various discounts and incentives that M&L could provide.  Agency employees also requested that M&L register or update its information on various contractor databases as required by the Federal Acquisition Regulation ("FAR").  Another internal email inquired whether it was necessary to fill out an Information Technology Requirement Analysis—a required agency authorization form—for the Starlab purchase and, if so, what should be done "to make this happen."  AR 366.

_____

[4] The record is unclear whether the systems purchased in 2009 were the SL 222 model, AR 286, or the SL 215 model, AR 90.  In either case, they were analog projectors of the type described above.

In the early afternoon of September 17, 2010, DODEA posted on the Federal Business Opportunities website a notice of its intent to award a sole source procurement to M&L. The notice stated DODEA's intent to procure 50 "Digital STARLAB Portable Planetarium SL 222 Science Systems[5] for its schools" at an estimated price of $2.7 million. AR 5. It further stated:

> This notice is not a request for competitive proposals. However, any party that believes it is capable of meeting this requirement as stated herein must submit a written capability statement that clearly supports and demonstrates their ability to provide the items by 22 September 2010, 1200 a.m., Eastern Standard Time.

AR 5. Two days later, on Sunday, September 19, the notice was modified to delete the estimated price.

The J&A was approved on September 20, 2010.[6] Citing 10 U.S.C. § 2304(c)(1) (2006) and FAR Part 6.302-2—"Only One Responsible Source and No Other Supplies or Services Will Satisfy Agency Requirements"—the agency justified the sole source procurement as follows:

> STARLAB is the only known portable planetarium system that meets DoDEA's established educational requirements to integrate sciences with teaching of other curricular [sic] such as, English/Language Arts, Cultures (Native American, Greek, African), Geography, History and Math. DoDEA has standardized curricula developed exclusively for the STARLAB portable planetarium. Curriculum standards and specific lessons for the STARLAB components are already in place and there are teacher trainers for this product in all respective areas of operation. It is also emphasized that STARLAB is the only source that provides a planetarium system with all the resources needed to support the instruction required by current curriculum to teach the DoDEA Kindergarten through Grade 12 curricular standards. STARLAB systems are currently in use within DoDEA[;] to cancel the curriculum predicated on the STARLAB product would create the necessity for a new

---

[5] This is oxymoronic, as the SL 222 is an analog, not digital, system.

[6] The J&A had been certified on September 16 and reviewed by counsel on September 17.

curriculum to be selected, developed, procured and implemented, to include, materials, staff development, creations [sic] of standards and rubrics.  Lost classroom instruction hours for teachers attending training for a new curriculum would adversely affect DoDEA's all too critical mission to effectively provide a quality education to its students.

AR 2-3.  The J&A also describes the agency's ostensibly fruitless "Effort to Obtain Competition":

Multiple searches via the Internet, General Services Administration (GSA) Multiple Award Schedule (MAS), trade magazines and catalogs for products by technical and contracting personnel to satisfy the Government's requirement have been conducted; this market research, including attendance by technical personnel at relevant curriculum-based conferences have resulted in no known sources that could satisfy the Government's requirement.  This requirement was also advertized last fiscal year as a sources sought notice yielding no other sources in response.[7]

AR 3.  The J&A also states that at the next five-year curriculum review, DODEA would "conduct further market research using the Internet, catalogs, [and] trade magazines, including direct contact with potential sources at both regional and national education conferences in effort to increase competition for this requirement."  AR 3.

On the same day that the J&A was approved, DODEA, in an internal email, selected which of M&L's price and incentive packages it wished to purchase.  Also on that day, Sky-Skan, Inc., another planetaria maker, contacted DODEA in response to the published notice to express interest in bidding on the contract and requested DODEA's specifications and requirements.  DODEA promptly contacted M&L, requesting "immediate assistance in providing additional specification to add to the requirement."  AR 305.  M&L replied with a lengthy email detailing its hardware, software, accessories, and warranty, highlighting several aspects it claimed to be

---

[7]  In its briefing, the government acknowledged that this statement is wrong.  The 2009 Starlab procurement had not been advertised.  Def. Mot. to Dismiss at 4 n.5.

superior to its competitors' systems.  The next day, September 21, DODEA modified the posted notice, adding the following language:

> DoDEA has standardized curricula developed exclusively for the STARLAB portable planetarium.  Curriculum standards and specific lessions [sic] for the STARLAB components are alredy [sic] in place and there are teacher trainers for this product in all respective areas of operation.

AR 9.   DODEA also replied to Sky-Skan's inquiry, quoting the language added to the notice and stating that the agency's "eagerness" to post the notice had caused this "critical omission."  AR 14-15.  DODEA's contract specialist noted in this email that "this [procurement] does not fit into my standard sole source template."  AR 14-15.

On September 23, 2010, DODEA requested M&L to complete a Request For Quotations ("RFQ") and return it by 6:00 a.m. the next morning. M&L responded with a quote later that day.  On Saturday, September 25, DODEA awarded a sole source contract for 50 digital planetaria to M&L in the amount of $2,292,498.21.  The contract originally called for delivery of the planetaria on November 30, 2010.  About a week later, a modification changed the delivery date to February 28, 2011.

On October 11, 2010, after becoming aware of the award to M&L, Digitalis sent a letter to Congressman Norm Dicks objecting to the manner in which the contract was awarded and expressing its interest in the contract.  The Congressman's office forwarded the letter to the Assistant Secretary of Defense for Legislative Affairs at DODEA on October 13 with a request for a response to Digitalis' concerns.   When a response was not promptly forthcoming, Digitalis alleges that its counsel contacted the agency employees listed in the published notice as well as DODEA's procurement office to request a copy of the J&A, which had not been publicized.[8]   These efforts produced no response.   Nearly six weeks later, on November 23, 2010, DODEA replied to Congressman Dicks, explaining that because Digitalis had failed to submit a capability statement or protest the solicitation prior to the comment deadline, the agency would not evaluate Digitalis' arguments or complaint.

---

[8] The government disputes whether such inquiries were made.

On December 2, 2010, Digitalis submitted a letter directly to the DODEA contracting officer expressing concern over the sole source procurement and describing Digitalis' portable planetaria. On December 6, Digitalis submitted its pre-filing notice to this court and filed its complaint on December 13, 2010. We held a status conference on December 15, 2010, at which time we denied plaintiff's motion for a temporary restraining order and preliminary injunction. At that time, M&L had already undertaken significant performance, including having completed and shipped 18 of the 50 planetaria. Oral argument was held January 31, 2011. By the time we held oral argument, all 50 of the planetaria had been delivered.

## DISCUSSION

We have jurisdiction under the Tucker Act to hear protests "in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1) (2006). In a bid protest, we "may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." *Id.* § 1491(b)(2).

Currently before the court are defendant's and intervenor's motions to dismiss as well as the parties' cross-motions for judgment on the administrative record. When considering the motions to dismiss, we examine the pleadings and supporting documents to determine whether, as a matter of law, jurisdiction is lacking or the claimant has failed to state a claim upon which relief can be granted. In contrast, we treat the motions for judgment as the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Questions of fact are resolved by reference to the administrative record. *Id.*

When considering the merits of a bid protest, our standard of review is the same as that found in the Administrative Procedures Act. 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Thus, we may hold unlawful and set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2006).

In addition, a protestor must demonstrate that it was significantly prejudiced by the alleged errors in the procurement process. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009) (citing *JWK Int'l*

*Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002)); *Bannum*, 404 F.3d at 1353. A protestor must demonstrate prejudice twice: first to establish standing and then again to prevail upon the merits. *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 482 n.25 (2008); *see also Linc Gov. Servs., LLC v United States*, ___ Fed. Cl. ___, *18, 2010 WL 4484021 (2010).

At both junctures, the test for prejudice in a post-award[9] bid protest is the same:[10] whether the protestor had a substantial chance of securing the contract but for the error. *Linc*, 2010 WL 4484021, at *18; *USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 450 (2010) ("This prejudice test for purposes of standing is the same as the test employed in the merits determination."). *Compare Labatt*, 577 F.3d at 1380 (applying "substantial chance" test to determine prejudice for purposes of standing) *with Bannum*, 404 F.3d at 1353 (applying "substantial chance" test to determine prejudice in analysis of merits of protest).

The evidence we consider, however, is different for the two prejudice determinations. When considering prejudice for purposes of establishing standing, we accept the allegations of agency error to be true. *USfalcon*, 92 Fed. Cl. at 450. Moreover, because standing is a jurisdictional matter, we may consider evidence outside the pleadings. *Cedars-Sinai Med. Cent. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (citations omitted) ("In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."). In contrast, once we have proceeded to consider the merits, we confine our review to the administrative record.

---

[9] In the *pre*-award context, prior to bids or a contract award, any prejudice is in the future and, therefore, speculative. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359-60 (Fed. Cir. 2009). Accordingly, a pre-award protestor may establish prejudice by showing "a non-trivial competitive injury which can be redressed by judicial relief." *Id.* at 1361.

[10] Some cases refer to the prejudice requirement as being "less stringent" at the standing inquiry than at the merits inquiry. *See Allied Tech. Group, Inc. v. United States*, 94 Fed. Cl. 16, 37 (2010) (*citing Dyonyx v. United States*, 83 Fed. Cl. 460, 465-66 n.2 (2008)). We believe this is a recognition that, while the same "substantial chance" test applies to both stages of the prejudice inquiry, the standing inquiry is satisfied by well-plead allegations, whereas the merits inquiry requires actual prejudice demonstrated in the record.

*Bannum*, 404 F.3d at 1356.[11]  Accordingly, for the second prejudice inquiry, which is a component of our review of the merits, we consider only the evidence in the record.  *Id.* at 1353-54 (stating that when making prejudice inquiry, the court shall "make factual findings from the record evidence as if it were conducting a trial on the record").

Here, Digitalis cannot show that it was prejudiced by the government's conduct.  Although the procurement was subject to multiple errors, ultimately none prevented Digitalis from submitting a capability statement or protesting the procurement in a timely manner.  Accordingly, we cannot sustain Digitalis' protest.

I.    Digitalis Was Not Prejudiced by the Alleged Errors and Thus Does Not Have Standing.

Standing is a threshold jurisdictional issue. *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998)).  The doctrine of standing ensures that the party seeking redress is properly entitled to have the court decide the dispute or issue.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  It is an outgrowth of the Constitution's "case or controversy" requirement, and although we are an Article I court, we generally apply the same standard as the federal courts created under Article III.  *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003).  This standard requires that, to have standing, a litigant must have suffered a concrete and particular injury that is fairly traceable to the defendant's action and which is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In the bid protest context, the standing issue is framed by the Tucker Act, which grants jurisdiction over a protest brought by an "interested party." 28 U.S.C. § 1491(b)(1). Though the statute does not speak of standing, its requirement of an interested party has been interpreted as "impos[ing] more stringent standing requirements than Article III."  *Weeks*, 575 F.3d at 1359 (citing *Am. Fed'n of Gov. Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)).  One of these requirements is to demonstrate prejudice. *Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of

---

[11]  The decision in *Bannum* was based on RCFC 56.1, which was subsequently abrogated and replaced by RCFC 52.1.  The new rule was designed to conform to the holding in *Bannum*.  *See* RCFC 52.1, 2006 Rules Committee Notes.

standing."). Because the issue of prejudice directly implicates the threshold matter of standing, we address it before considering the merits. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

For purposes of standing, a protestor "has been prejudiced when it can show that but for the error, it would have had a substantial chance of securing the contract." *Labatt*, 577 F.3d at 1378. At this point in the inquiry, we assume the well-pled allegations of error to be true. *USfalcon*, 92 Fed. Cl. at 450 (citing *Info. Tech.*, 316 F.3d at 1319; *Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 396 (2005)). Here, Digitalis has alleged a number of errors, including the use of a sole-source procurement, erroneous or misleading information in the published synopsis, an unreasonably short comment period, premature negotiations with M&L, and a failure to publicize the J&A post-award. Even assuming the allegations to be true, however, none of these errors actually injured Digitalis. Even if the procurement had proceeded flawlessly, Digitalis' chances to get the contract would not have been any different.

Here, assuming all of Digitalis' allegations to be true—that its product was capable of fulfilling agency needs, that the agency relied on a faulty justification, that the published synopsis was misleading, that the comment period was unreasonably short, or that the agency failed to conduct proper market research—none of these allegations were what prevented Digitalis from filing a capability statement, an objection to the notice, or a prompt bid protest here. For example, a longer response time would have availed little, for Digitalis failed to notice the synopsis until nearly three weeks after it was posted. Likewise, the posted notice's reference to an analog projector was not misleading because Digitalis immediately expressed an interest upon discovering the notice. Similarly, even if the agency had publicized a Request for Quotations on the Federal Business Opportunities website, Digitalis, which was not checking the website during this period, would have been unaware of it. Finally, any delays in protesting the decision are not the fault of the agency, since Digitalis elected to pursue recourse through a Congressman rather than through immediate resort to a bid protest.

Ultimately, none of the alleged errors were the cause of Digitalis' failure timely to challenge the procurement or to submit a capability statement. It is well-established that non-prejudicial errors do not automatically invalidate a procurement. *Labatt*, 577 F.3d at 1380 (citations omitted). "Without a showing of harm specific to the asserted error, there is no injury to redress, and no standing to sue." *Id.* Accordingly, Digitalis lacks standing and its protest must be dismissed.

II.    Digitalis Was Not Prejudiced by Any Errors in the Procurement.

Even assuming *arguendo* that Digitalis had standing to challenge the merits of the procurement, it would still be required to show that any procurement errors caused prejudice. *Bannum,* 404 F.3d at 1351. Here, Digitalis cannot show that any such errors were prejudicial. Accordingly, we cannot sustain its protest.

As a general matter, an agency procuring products or services is obliged to "obtain full and open competition through the use of competitive procedures in accord with the requirements of this chapter and the Federal Acquisition Regulation." 10 U.S.C. § 2304(a)(1)(A). There are, however, exceptions to this requirement, such as when the goods or services are available from only one source and no other item will satisfy the agency's needs. *Id.* § 2304(c)(1). Such procurements may be set aside if they lack a rational basis or involved a violation of a statute, regulation, or procedure. *See Weeks*, 575 F.3d at 1358; *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1329 (Fed. Cir. 2004). Here, Digitalis challenges both the rational basis of this procurement and its compliance with various limitations placed on such non-competitive acquisitions.

Our review of the administrative record lends credence to a number of Digitalis' allegations of hasty and shoddy contracting. As previously noted, however, even if a protestor proves there were procurement errors, the protest will be sustained only if the errors "significantly prejudiced" the protestor. *Bannum*, 404 F.3d at 1353. This is a factual determination. *Id.* A protestor must show there was a "substantial chance" it would have received the contract but for the agency's errors. *Id.* (citing *Info. Tech*., 316 F.3d at 1319; *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

Plaintiff disputes the applicability of the prejudice requirement, arguing that a protestor is required to show prejudice only when alleging a violation of statute or regulation and not when challenging the rational basis of the procurement. Pl.'s Reply at 8 (citing *Impresa Constuzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Digitalis' reliance on *Impresa*, however, is misplaced. For one, *Impresa* does not explicitly support Digitalis' interpretation but merely mentions prejudice only in the context of an alleged violation of statute. Without a more explicit statement, we will not take this as an implicit change in our standard of review. Second, Digitalis' argument is rebutted by subsequent cases, such as *Bannum*, that affirm the requirement of prejudice regardless of whether the error involved the rational basis or a violation of statute or regulation. *See Bannum*,

404 F.3d at 1351; *Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 466 (citing *Bannum*, 404 F.3d at 1351) ("[I]f the government action lacked a rational basis, a factual inquiry must be conducted to determine whether the protester was prejudiced by the conduct."). Finally, the Administrative Procedures Act, upon which our entire bid protest standard of review is founded, mandates that "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.

Here, Digitalis makes multiple allegations of error, some of which appear to be well-founded. As already discussed, however, none of these errors, if rectified, would have put Digitalis in a position to receive the contract. Stated differently, we cannot say that but for these errors, Digitalis had a substantial chance at the contract. For example, Digitalis argues that the synopsis misidentified the object sought. The fact remains, however, that when Digitalis did eventually see the synopsis, it was immediately spurred to action. There was no confusion as to the thrust of the procurement. Digitalis also argues that the comment period was not reasonable, as required by FAR Part 5.203(b). We are sympathetic to the argument that five days—two of which were weekend days—and an eleventh-hour modification strain the bounds of reasonableness. The fact remains, however, that Digitalis did not notice the synopsis until more than three weeks later. Even if the comment period had been 20 days, it would not have changed the outcome of the procurement. The same is true for Digitalis' allegations that the agency commenced negotiations prematurely in violation of FAR Part 6.303-1(a) and that the agency violated 10 U.S.C. § 2304(f)(4)(A) by making a sole-source acquisition on the basis of a failure to plan ahead or the expiration of funds. In neither case were these errors prejudicial and thus are no basis on which to sustain Digitalis' protest.

III.   <u>Other Arguments Are Rendered Moot.</u>

In light of the foregoing, there is no need for us to discuss the parties' arguments regarding waiver, laches, and the injunction factors.

CONCLUSION

For the foregoing reasons, we grant defendant's and intervenor's motions to dismiss and deny plaintiff's motion for judgment on the administrative record. The clerk is directed to dismiss the case. No costs.

s/Eric G. Bruggink<br>
ERIC G. BRUGGINK<br>
Judge